UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:23-CV-22385-RKA

THE SMILEY COMPANY SPRL,

     Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

     Defendants.

_____/

**PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF**
**TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND**
**ORDER RESTRAINING TRANSFER OF ASSETS**

     Plaintiff, The Smiley Company SPRL ("Smiley" or "Plaintiff"), by undersigned counsel

and pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, Fed. R. Civ. P. 65, and The All Writs Act, 28

U.S.C § 1651(a), respectfully moves on an ex parte basis for entry of a temporary restraining order,

an order restraining transfer of assets, and upon expiration of the temporary restraining order, a

preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated

Associations identified on Schedule "A"[1] to the Complaint (collectively, the "Defendants"). In

support thereof, Plaintiff respectfully refers the Court to the following Memorandum of Law.

**MEMORANDUM OF LAW**

**I.     INTRODUCTION**

     Defendants are knowingly and intentionally promoting, advertising, distributing, offering

for sale, and selling goods bearing and/or using counterfeits and confusingly similar imitations of

---

[1] A copy of Schedule A to the Complaint is attached as Exhibit 1 to Plaintiff's *Ex Parte* Motion
for Temporary Restraining Order, Preliminary Injunction, and Order Restraining Assets filed
herewith.

one or more of Plaintiff's registered trademarks at issue as well as unauthorized reproductions or derivatives of Plaintiff's copyrighted works within this district and throughout the United States by operating e-commerce stores established via third-party marketplace websites and/or commercial Internet websites operating under their seller identification names identified on Schedule "A" hereto (the "Seller IDs").  Specifically, Plaintiff has obtained evidence clearly demonstrating the following: (1) Defendants are engaged in the advertising, offering for sale, and sale of counterfeit and infringing versions of Plaintiff's branded goods and copyrighted works; and (2) Defendants accomplish their sales of counterfeit and infringing goods via the Internet through the use of, at least, e-commerce stores operated via the Internet marketplace websites.  Based on this evidence, Plaintiff's Complaint alleges claims for trademark counterfeiting and infringement, false designation of origin, common law unfair competition, common law trademark infringement, and copyright infringement.

Defendants' unlawful activities have deprived and continue to deprive Plaintiff of its right to determine the manner in which its trademarks and copyrighted works are presented to the public. Indeed, Defendants have and continue to wrongfully trade and capitalize on Plaintiff's reputation and goodwill and the commercial value of Plaintiff's trademarks and copyrights.  By their activities, Defendants are defrauding Plaintiff and the consuming public for their own benefit.  Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting Defendants' further wrongful use of Plaintiff's trademarks and copyrights.

Moreover, Defendants use money transfer and/or retention/processing services with PayPal, Inc. ("PayPal"), or have their payments processed on their behalf using an aggregate escrow account as a method to receive monies generated through the sale of counterfeit and

infringing goods.[2] *See* accompanying Declaration of A. Robert Weaver ("Weaver Decl.") at ¶ 3.

In light of the inherently deceptive nature of the counterfeiting business, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. Both the Lanham Act and Copyright Act allow Plaintiff to recover the illegal profits gained through Defendants' distribution and sales of counterfeit and infringing goods. See 15 U.S.C. § 1117(a) & 17 U.S.C. § 504(b). To preserve that disgorgement remedy, Plaintiff seeks an ex parte order restraining Defendants' assets including specifically funds transmitted through all possible online marketplace payment providers, including but not limited to Alipay, Wish.com, Worldpay, PayPal, the DHgate.com and Joom.com platforms (collectively, the "Financial Entities").

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Intellectual Property Rights

Plaintiff is the owner of the federally registered trademarks and copyrights identified in Schedule B and C (the "Smiley Marks" and "Copyrighted Works") attached to the Declaration of Nicolas Lourfrani ("Loufrani Decl."), filed herewith. Loufrani Decl, at ¶ 10; See also Complaint (ECF No. 1), at ¶ 25, 32. The Smiley Marks and Copyrighted Works are used in connection with the design, marketing, and distribution of high-quality goods in at least the categories identified in the Smiley Marks. Loufrani Decl. at ¶ 11. The Smiley Marks and Copyrighted Works are symbols of Plaintiff's quality, reputation, and goodwill and the Smiley Marks have never been abandoned. Id. at ¶¶ 14. Moreover, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its trademarks and copyrights. *Id*. at ¶¶ 11 & 20.

Plaintiff has extensively used, advertised, and promoted the Smiley Marks and Copyrighted

---

[2] These escrow accounts are held in the name of various financial institutions, including but not limited to AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, Red Bubble and/or Taobao. Weaver Decl. at ¶ 3.

Works in the United States, and has carefully monitored and policed the use of the Smiley Marks and Copyrighted Works.  *Id.*, at ¶¶ 13 – 14 & 19.  As a result of Plaintiff's efforts, the Smiley Marks have acquired fame in the consumer market.  *Id*. at ¶¶ 7 – 12.  The Smiley Marks are widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning.  Id.  The Smiley Marks have come to symbolize the enormous goodwill of Plaintiff's products throughout the United States.  *Id*. at ¶ 14.

### B.    Defendants Wrongfully Use Plaintiff's Trademarks and Copyrights.

Defendants do not have, nor have they ever had, the right or authority to use the Smiley Marks or Copyrighted Works for any purpose. *See* Loufrani Decl. at ¶ 15.  Despite their known lack of authority to do so, Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale, through their respective Seller IDs, goods using counterfeit and infringing trademarks and unauthorized reproductions and derivative works without authorization ("Defendants' Goods").  *Id*.; see also Weaver Decl. at ¶ 4 (attaching relevant web page captures from Defendants' Internet based e-commerce stores operating under the Seller IDs).

Given Defendants' blatant copying of the Smiley Marks and Copyrighted Works, Defendants' Goods are indistinguishable to consumers, both at the point of sale and post-sale.  By using the Smiley Marks, Defendants have created a false association between their counterfeit and infringing goods and e-commerce stores and websites, and Plaintiff.  Such false association is in violation of 15 U.S.C. § 1125(a) and is causing and will continue to cause Plaintiff irreparable harm and damage.  Plaintiff is further suffering irreparable harm and damage by the incalculable profit Defendants are deriving by using Plaintiff's Copyrighted Works to drive consumers to the e-commerce stores and commercial websites operating under the Seller IDs.

As part of its ongoing investigation regarding the sale of counterfeit and infringing products, Plaintiff accessed Defendants' Internet based e-commerce stores operating under each of the Seller IDs, initiated orders from each Seller IDs for the purchase of various products, all bearing, or suspected of bearing, counterfeits of, at least one of the Smiley Marks or Copyrighted

Works, and requested each product to be shipped to an address in the Southern District of Florida.  *See* Loufrani Decl. at ¶ 17; Weaver Decl. at ¶ 5.

Plaintiff, who is able to identify distinctions between Plaintiff's genuine and authorized merchandise and counterfeit copies of the same, reviewed and visually inspected the items offered for sale via each of the Seller IDs by reviewing the e-commerce stores operating under each of the Seller IDs, or the detailed web page captures and images of the items bearing the Smiley Marks or Copyrighted Works, and determined the products were not genuine versions of Plaintiff's products.  See Loufrani Decl. at ¶ 18.

A comparison of the Smiley Marks and Copyrighted Works to the marks and images used by Defendants in connection with the promotion and sale of Defendants' Goods reveals the obvious counterfeit and infringing nature of Defendants' Goods.  *See* Plaintiff's Trademark Registrations and Copyrighted Works (Loufrani Decl. at Schedules B and C) compared with Defendants' products (Weaver Decl. at ¶ 4, Schedule D).  Defendants' Goods are being promoted, advertised, offered for sale, and sold by Defendants within this district and throughout the United States.  *Id*. at ¶ 5.  Defendants are making substantial sums of money by preying upon members of the general public, many of whom have no knowledge Defendants are defrauding them.  Defendants are also falsely representing to consumers that their counterfeit and infringing branded goods are genuine, authentic, endorsed, and authorized by Plaintiff.  Ultimately, Defendants' Internet activities infringe on Plaintiff's rights.  The Seller IDs and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiff.  *Id*. at ¶ 6.

## III.    ARGUMENT

### A.    Ex Parte Temporary Restraining Order is Essential to Prevent Immediate Injury

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's

counsel where it clearly appears from the specific facts shown by affidavit "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b).  This is such a case.

Defendants herein fraudulently promote, advertise, sell, and offer for sale goods bearing and/or using counterfeits and infringements of the Smiley Marks and Copyrighted Works via their e-commerce stores and websites using at least the Seller IDs. Specifically, Defendants are wrongfully using counterfeits and infringements of the Smiley Marks and Copyrighted Works to increase consumer traffic to their illegal operations.  By their actions, Defendants are creating a false association in the minds of consumers between Defendants and Plaintiff.  The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of the Smiley Marks and Copyrighted Works and preserve the status quo until such time as a hearing can be held.  *See Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding ex parte relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

Absent a temporary restraining order without notice, Defendants can and will significantly alter the status quo before the Court can determine the parties' respective rights.  In particular, the e-commerce stores at issue are under Defendants' complete control.  Thus, Defendants have the ability to change the ownership or modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership rights to the Seller IDs.  *See* Weaver Decl. at ¶ 7.  Such modifications can happen in a short span of time after Defendants are provided with notice of this action.  *Id*.  Thus, Defendants can easily electronically transfer and conceal the funds sought to be restrained if they obtain advance notice of Plaintiff's Motion for Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and eviscerate the status quo.  *Id*.  As Defendants engage in illegal trademark counterfeiting and copyright infringing activities, Plaintiff has no reason to

believe Defendants will make their assets available for recovery pursuant to an accounting of profits or will adhere to the authority of this Court any more than they have adhered to federal trademark and copyright laws.

Moreover, federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an ex parte basis. *See, e.g., Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). Accordingly, this Court should prevent an injustice from occurring by issuing an ex parte temporary restraining order which precludes Defendants from continuing to display their infringing content via the e-commerce stores and websites or modifying or deleting any related content or data. Only such an order will prevent ongoing irreparable harm and maintain the status quo.

### B.   Temporary Restraining Order and Preliminary Injunction Standard

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. *See Emerging Vision, Inc. v. Glachman*, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (*citing Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) *aff'd* 234 F.3d 1163 (11th Cir. 2000)). In order to obtain a temporary restraining order or a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. *Schiavo*, 403 F.3d at 1225-26; *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets). Plaintiff's evidence establishes all the foregoing and relevant factors.

### C.      Likelihood of Success on the Merits

#### 1.      Plaintiff's counterfeit and trademark infringement claim under Section 32 of the Lanham Act (Count I of the Complaint)

Section 32 of the Lanham Act provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a).  "Thus, to prevail, a plaintiff must demonstrate (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion."  *Chanel v. Reznik*, No. 07-cv-60493, 2007 WL 9710719, at *2 (S.D. Fla. Nov. 21, 2007) (*citing Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)).  Plaintiff's evidence submitted herewith satisfies the requirements of 15 U.S.C. § 1114.

Plaintiff's ownership and exclusive use of the Smiley Marks are presumed through its various registrations on the Principal Register of the United States Patent and Trademark Office.  *See Vernon v. Ziel*, No. 18-cv-24054, 2020 WL 4501802, at *4 (S.D. Fla. June 15, 2020) (citing 15 U.S.C. § 1115(a)).  Plaintiff has been using the Smiley Marks well prior to the promotion and sale of Defendants' Goods in the U.S.  See Loufrani Decl. at ¶ 15.  Moreover, Defendants have never had the right or authority to use the Smiley Marks.  Id.

With respect to likelihood of confusion, the Eleventh Circuit has long used the following seven-factor test: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion.  *See Ross Bicycles, Inc. v. Cycles USA, Inc*., 765 F.2d 1502, 1506 (11th Cir. 1985) (*citing John H. Harland Co. v. Clarke Checks, Inc*., 711 F.2d 966, 972 (11th Cir. 1983)).  The seven factors listed are to be weighed and balanced and no single factor is dispositive.  *Id*.

### a.     Strength of the marks

The spectrum of protectability and strength for trademarks is divided into the following four designations: (1) coined, fanciful, or arbitrary; (2) suggestive; (3) descriptive; and (4) generic.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992).  Arbitrary or fanciful marks are the strongest and deemed inherently distinctive and entitled to protection.  *Id.*  Here, the asserted Smiley Marks are undisputedly strong, arbitrary, and fanciful marks.  See Loufrani Decl. at Schedule B.  The Smiley Marks have also acquired secondary meaning.  Plaintiff has expended substantial time, labor, skill, and expense in developing, advertising, and promoting the Smiley Marks.  See Loufrani Decl. at ¶¶ 14.  The Smiley Marks enjoy widespread recognition and are prominent in the minds of consumers.  Id.  Indeed, the Smiley Marks are among the most widely recognized trademarks influencing modern culture through fashion, art, beauty, homeware, food and beverage.  Id. at ¶¶ 12.

### b.     Similarity of the marks

"The likelihood of confusion is greater when an infringer uses the exact trademark."  *Turner Greenberg Associates, Inc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004) (*citing United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981)).  Here, Defendants are using marks that are identical or nearly identical to the Smiley Marks.  *See* Plaintiff's Trademark Registrations (Complaint. at ¶ 25) compared with Defendants' infringing products (Weaver Decl. at ¶ 4 and Schedule D[3]); *see also Fimab-Finanziaria Maglificio v. Helio Import/Export, Inc.*, 601 F. Supp. 1, 2 (S.D. Fla. 1983) (using "ocular test" of direct comparison and finding marks that are slightly modified from the copied

---

[3] Due to file size and the number of Defendants identified in Schedule "A" to the Complaint, Schedule D contains a representative sample selected from the group of defendants.  Similar evidence was obtained and reviewed for each and every Defendant identified in Schedule "A."  This comprehensive list of evidence can be immediately provided to the Court under seal upon request. (Weaver Decl. at ¶4 and n. 1).

registered marks are still considered counterfeit marks); 15 U.S.C. § 1127 (defining "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark").

### c. Similarity of the goods

"The greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland Co.*, 711 F.2d at 976. Defendants are selling the same types of goods Plaintiff sells. *See* Loufrani Decl. at ¶¶ 15-18; see generally Defendants' products attached as Schedule "D" to the Weaver Decl. Because Defendants' goods bear counterfeits of the Smiley Marks, they appear virtually identical to Plaintiff's genuine products in the consumer market.

### d. Similarity of sales method and advertising method

Convergent marketing channels increase the likelihood of confusion. *See Turner Greenberg Associates, Inc.*, 320 F. Supp. 2d at 1332. Both Plaintiff and Defendants sell and advertise their products using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States, including the Southern District of Florida. See Weaver Decl. at ¶ 5. Thus, the conditions of purchase for both parties are unmistakably identical. Moreover, both target the same general U.S. consumers, and as such, Plaintiff is directly competing with Defendants' products.

### e. Defendants' intent

This district has held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Turner Greenberg Associates, Inc.*, 320 F. Supp. 2d at 1333 (*citing Carnival Corp. v. Seaescape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)). Further, "[i]ntentional copying of another's trademark is prima facie evidence both that the mark has a secondary meaning, and that the imitation is likely to confuse consumers." *See Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Florida*, 546 F. Supp. 987, 996 (S.D. Fla. 1982). In view of the substantial similarities between the Smiley Marks and

Defendants' Goods, there is no doubt that Defendants intentionally set out to copy the Smiley Marks in a manner that is likely to generate confusion on the part of potential consumers.

### f.    Evidence of actual confusion

Actual confusion is not a prerequisite to establishing a likelihood of confusion.  *See Frehling Enters.*, 192 F.3d 1330, 1340.  In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available.  Defendants are advertising, offering to sell, and selling counterfeit goods identical in appearance to those sold by Plaintiff.  *See* Loufrani Decl. at ¶¶ 15-18; *see* generally Defendants' Seller IDs attached as Schedule "D" to the Weaver Decl.  Even if buyers are told of the bogus nature of Defendants' Goods, other consumers viewing Defendants' Goods in a post-sale setting will be confused, because they are viewing goods bearing the Smiley Marks which undeniably creates the impression they are viewing genuine goods sold or authorized by Plaintiff.  Such post-sale confusion is entirely actionable.  *See Remcraft Lighting Products, Inc. v. Maxim Lighting, Inc.*, 706 F. Supp. 855, 859 (S.D. Fla. 1989) ("The likelihood of confusion need not occur at wholesale level when the end user will be confused.").

In sum, all seven factors therefore weigh in Plaintiff's favor and therefore support a likelihood of success on the merits of Plaintiff's counterfeit and trademark infringement claim.

### 2.    Plaintiff's false designation of origin claim under Section 43 of the Lanham Act (Count II of the Complaint)

As with a trademark infringement claim, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue.  *Two Pesos, Inc.*, 505 U.S. at 780.  Notwithstanding whether the violation is identified as an infringement, unfair competition, or false designation of origin, the determinative factor is a likelihood of consumer confusion.  *Id*.  Therefore, because Plaintiff has established the merits of its trademark counterfeiting and infringement claim against Defendants, a likelihood of success on the merits is

also shown for Plaintiff's false designation of origin claim.

### 3. Plaintiff's common law unfair competition and common law trademark infringement claims (Counts III and IV of the Complaint)

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. See Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims."). Additionally, the analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under Section 32(a) of the Lanham Act. PetMed Express, Inc. v. Medpets.com, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004). As discussed above, Plaintiff has satisfied the elements of its trademark counterfeiting and infringement claim against Defendants, establishing that a likelihood of confusion exists herein. Accordingly, Plaintiff is also likely to succeed on the merits of its common law unfair competition and trademark infringement claim.

### 4. Plaintiff's copyright infringement claim (Count V of the Complaint)

"A claim for copyright infringement consists of only two elements: 1) a plaintiff must show that the plaintiff owns a valid copyright; and 2) that the defendant has engaged in unauthorized copying." Heralds of the Gospel Foundation, Inc. v. Varela, No. 17-cv-22281, 2017 WL 3868421, at *3 (S.D. Fla. June 23, 2017) (citing Roig v. Star Lofts on the Bay Condominium Ass'n, Inc., No. 11-cv-20421, 2011 WL 6178882, at *2 (S.D. Fla. Dec. 12, 2011)). "The copying must be so extensive that there is a substantial similarity between the defendant's work and the protectible elements of the plaintiff's work." Id. (citing Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC, No. 12-cv-22539, 2015 WL 427817, at *5 (S.D. Fla. Feb. 2, 2015)).

Here, Plaintiff is the owner of several U.S. copyright registrations. See Complaint at ¶ 32; see also Loufrani Decl. at ¶ 10. With respect to the second element for establishing copyright

infringement, comparisons of Defendants' Goods with Plaintiff's Copyrighted Works conclusively demonstrate Defendants' blatant infringement of Plaintiff's exclusive copyrights. *See* Plaintiff's Copyrighted Works (Complaint at ¶32) compared with Defendants' infringing products (Weaver Decl. at ¶ 4 and Schedule D). Specifically, the evidence submitted herewith shows that Defendants' ongoing unauthorized promotion and sale of goods bearing Plaintiff's Copyrighted Works through their e-commerce stores and websites using at least the Seller IDs, directly infringes Plaintiff's exclusive rights under the Copyright Act, specifically, Plaintiff's exclusive rights to reproduce, prepare derivatives, distribute, and/or display its Copyrighted Works. 17 U.S.C. §§ 106(1), (2), (3), and (5); see also Tiffany (NJ), LLC v. Dongping, No. 10-cv-61214, 2010 WL 4450451, at *5 (S.D. Fla. Oct. 29, 2010) (finding unopposed declarations supporting copyright ownership and "exact duplicates" of asserted designs were "sufficient to establish liability for copyright infringement").

### D.     Plaintiff is Suffering Irreparable Injury.

The Eleventh Circuit has held as follows: "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. Appx. 180, 191 (11th Cir. 2005) (*citing McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998)). Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a plaintiff has demonstrated it will lose control of its goodwill and reputation as a result of a defendant's activities. *Id.* A likelihood of confusion exists herein because Defendants have engaged in counterfeiting and infringing activities using spurious designations that are virtually indistinguishable from the Smiley Marks.

Additionally, harm in copyright cases might be "irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010); *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 617-621 (S.D.N.Y. 2011) (granting injunction based on streaming

over Internet of copyrighted TV programming). Plaintiff suffers financial harm from Defendants' distribution of the Copyrighted Works, which undermines the value of that content and the ability of Plaintiff to profit from its investment, harm from the loss of control over its programming and related merchandise, and harm from decreases in value of its authorized merchandise, among other harms.  Loufrani Decl. at ¶ 21.  These harms are notoriously difficult to quantify, and accordingly are considered irreparable.  Id. at ¶ 22; *see, e.g., Salinger*, 607 F.3d at 81 (loss of sales due to infringement is "notoriously difficult" to prove); *WPIX*, 765 F. Supp. 2d at 620 (finding "taking away" indeterminate profits and number of "viewers … which compensate or otherwise obtain permission from plaintiffs for the use of their works" are "unquantifiable" harms, they are "irreparable.").

Moreover, because Defendants' infringing conduct divests Plaintiff of control over its content and of its exclusive copyrights, it is irreparable.  See Salinger, 607 F.3d at 82 (noting how violation of copyright owner's "right to exclude" renders monetary remedies inadequate in a wide range of circumstances) (quoting eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 395 (2006)); see also Bait Productions Pty Ltd. v. Murray, No. 13-cv-00169, 2013 WL 4506408, at *4 (M.D. Fla. Aug. 23, 2013) (holding "due to the possibility of future infringement of the motion picture …, monetary damages alone are inadequate to compensate Bait Productions for any injury it has sustained or will potentially sustain in the future.").

    **E.**    **The Balance of Hardship Tips Sharply in Plaintiff's Favor.**

Plaintiff has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Smiley Marks and Copyrighted Works.  See Loufrani Decl. at ¶¶ 14.  Should Defendants be permitted to continue their trade in counterfeit goods, Plaintiff will suffer losses and damage to its reputation.  Id. at ¶ 22; see also *WPIX*, 765 F. Supp. 2d at 603 ("[i]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product.").  Defendants will therefore suffer no legitimate hardship in the event a temporary restraining order is issued because Defendants have no right to engage in their

present counterfeiting and infringement activities.

**F.     The Relief Sought Serves the Public Interest.**

Defendants are engaged in illegal activities and are directly defrauding the consuming public by palming off Defendants' Goods as Plaintiff's genuine goods. The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. *See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.*, 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

Further, the public interest is protected by issuing an injunction because Plaintiff loses valuable incentives to continue to create programming and related merchandise if it continues to be deprived of (1) control over its content, (2) how and where the content gets distributed, and (3) potential revenue sources. Protecting Plaintiff's Copyrighted Works is consistent with, if not equivalent to, promoting the public interest. *See Salinger*, 607 F.3d at 82; *WPIX*, 765 F. Supp. 2d at 621; *CBS Broad., Inc. v. EchoStar Communs. Corp.*, 265 F.3d 1193, 1198 (11th Cir. 2001) ("the public interest lies with protecting the rights of copyright owners."); *C.B. Fleet Co. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1084 (S.D. Fla. 2007) ("The public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works.").

**G.     The Equitable Relief Sought is Appropriate.**

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a). Similarly, the Copyright Act authorizes courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

**1.     Entry of an order immediately enjoining Defendants' unauthorized and unlawful use of Plaintiff's trademarks and copyrights is appropriate.**

Plaintiff requests an order requiring Defendants immediately cease all use of the Smiley Marks and Copyrighted Works, or substantially similar marks or derivative works, including on or in connection with all e-commerce stores, domain names, and websites owned and operated, or controlled by them.  Such relief is necessary to stop the ongoing harm to Plaintiff's trademarks, goodwill, and copyrights and to prevent Defendants from continuing to benefit from the increased consumer traffic to their illegal operations created by their unlawful use of the Smiley Marks and Copyrighted Works.  Many courts, including this Court, have authorized immediate injunctive relief in similar cases involving the unauthorized use of intellectual property rights.[4]

    **2.**       **2.**       **Entry of an order prohibiting transfer of the Seller IDs during the pendency of this action is appropriate.**

To preserve the status quo, Plaintiff seeks an order temporarily modifying control of and prohibiting Defendants from transferring use or control of the Seller IDs being used and controlled by Defendants to other parties.  Once they become aware of litigation against them, Defendants operating via the Internet can easily, and often will, change the ownership or modify e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, and thereby thwart the Court's ability to grant meaningful relief.  See Weaver Decl. at ¶ 7.  Here, an interim order prohibiting Defendants from transferring their e-commerce stores and domain names operating under the Seller IDs poses no burden on them, preserves the status quo, and ensures that this Court,

---

[4] See Adidas AG v. 2013jeremyscottxadidas.com, No. 13-cv-61867-ROSENBAUM, 2013 WL 5306704 (S.D. Fla. Sept. 19, 2013); Mycoskie, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", No. 19-cv-60518-BLOOM, 2019 WL 1206340 (S.D. Fla. March 14, 2019); Adidas AG v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", No. 19-cv-60457-DIMITROULEAS, 2019 WL 1989208 (S.D. Fla. Feb. 25, 2019); Apple Corps Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", No. 19-cv-60404-WILLIAMS, 2019 WL 1989221 (S.D. Fla. Feb. 20, 2019); Michael Kors, L.L.C. v. 0-66602, No. 18-cv-62775-GAYLES, 2018 WL 8223783 (S.D. Fla. Dec. 7, 2018); Gucci Am., Inc. v. BGAADB, No. 18-cv-62227-UNGARO, 2018 WL 6261548 (S.D. Fla. Sept. 21, 2018); Cartier Int'l A.G. v. Replicapaneraiwatches.cn, No. 17-cv-62401-MOORE, 2018 WL 2006882 (S.D. Fla. Jan. 2, 2018).

after fully hearing the merits of this action, will be able to afford Plaintiff full relief. Courts have granted this precise relief in this district and similar relief in actions where the relied upon instrumentalities of infringement and contact are e-commerce stores, domain names, and associated websites. See supra at n. 2.

### 3. An *ex parte* order restraining transfer of assets is appropriate.

In addition to an order temporarily restraining Defendants' practices, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets. Plaintiff has demonstrated above that it will likely succeed on the merits of its claims. As such, under the Lanham Act and Copyright Act, Plaintiff will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their counterfeiting scheme. 15 U.S.C. § 1117; 17 U.S.C. § 504. Due to the deceptive nature of the counterfeiting business, and Defendants' deliberate violations of federal trademark laws, Plaintiff respectfully requests this Court grant additional ex parte relief identifying payment accounts and restraining the transfer of all monies held or received by the Financial Entities, or other financial institutions for the benefit of any one or more of the Defendants, and any other financial accounts tied thereto. *See SEC v. ETS Payphones*, 408 F.3d 727, 734-735 (11th Cir. 2005) (finding it proper to enjoin all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case). Indeed, almost every Circuit Court, including the Eleventh Circuit, has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to courts to restrain assets pendente lite. *See Mason Tenders Dist. Council Pension Fund v. Messera*, No. 95-cv-9341, 1997 WL 223077, at *7 (S.D.N.Y. May 7, 1997) ("Almost all the Circuit Courts have held that Rule 65 is available to freeze assets pendente lite under some set of circumstances").

In light of the illicit nature of the counterfeiting business, and the ability of counterfeiters to practically eliminate evidentiary trails by conducting their business entirely over the Internet, courts in the Eleventh Circuit, among others, have particularly noted the significance of such asset restraints in cases involving counterfeiting defendants. *See, e.g. Levi Strauss & Co. v. Sunrise Int'l Trading*,

51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), aff'd, 970 F.2d 552 (9th Cir. 1992).  In *Levi Strauss*, the Eleventh Circuit upheld an order granting an asset restraint against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under 15 U.S.C. § 1117.  *Levi Strauss & Co.*, 51 F.3d at 987.  Distinguishing two earlier cases not involving Lanham Act claims, the Eleventh Circuit emphasized the necessity of the restraint holding that a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."  *Id.* (*citing Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir.1984) (district court may exercise its full range of equitable powers, including a preliminary asset restraint, to ensure that permanent equitable relief will be possible)).  This Court has held that it may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested.  *See S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006) (noting that there is no requirement for the restrained assets be traceable to the fraudulent activity underlying a lawsuit).  Indeed, this Court has entered the precise relief sought herein in many cases similar to the matter at hand.  *See supra* at n. 1.

Other courts have likewise granted the relief requested herein.  For example, in *Reebok v. Marnatech* the district court granted plaintiff a limited restraint of the defendants' assets for the purpose of preserving those assets, thus ensuring the availability of a meaningful accounting after trial.  *Reebok Int'l Ltd.*, 737 F. Supp. at 1526.  Affirming the district court's order, the Ninth Circuit determined that the plaintiff met its burden of demonstrating that defendants might hide their allegedly ill-gotten profits if their assets were not frozen.  *Reebok Int'l Ltd.*, 970 F.2d 552, 563 (9th Cir. 1992).  The Ninth Circuit further held as follows: "because the Lanham Act authorizes the District Court to grant Reebok an accounting of [defendant's] profits as a form of final equitable relief, the District Court has the inherent power to freeze [defendant's] assets in order to

ensure the availability of that final relief." *Id*. at 559; *see also Republic of Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988), cert. denied, 490 U.S. 1035 (1989) ("[a] court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies"); *Kemp v. Peterson*, 940 F.2d 110, 113-114 (4th Cir. 1991) (district court may restrain assets not specifically traced to illegal activity).

Using the power to issue provisional remedies ancillary to their authority to provide final equitable relief, numerous courts have granted orders restraining defendants from transferring their assets under trademark infringement claims. *See e.g. Levi Strauss & Co*., 51 F.3d at 987; *Reebok Int'l Ltd*., 970 F.2d at 559. Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued ex parte. *See F.T. Int'l Ltd v. Mason*, No. 00-cv-5004, 2000 WL 1514881, at n. 1 (E.D. Pa. Oct. 11, 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc*., No. 99-cv-7249, 2000 WL 715601 (N.D. Ill. June 2, 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets).

In this case, Defendants' blatant violations of federal trademark laws warrant an ex parte order restraining the transfer of their ill-gotten assets. Moreover, as Defendants' businesses are conducted anonymously over the Internet, Plaintiff has an additional cause for ex parte relief, as Defendants may easily secret or transfer their assets without the Court's or Plaintiff's knowledge.

## H.    Expedited Discovery is Appropriate

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. Id. (citation

omitted).  Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants.  *See* Fed. R. Civ. P. 26(b)(2).  Plaintiff respectfully requests expedited discovery to discover the bank and payment service accounts Defendants use for their unlawful counterfeiting operations, and the infringing products sold by Defendants.  The expedited discovery requested in the proposed order is limited to include only what is essential to prevent further irreparable harm.  Discovery of these financial accounts so that they can be frozen is necessary to ensure these activities can be contained.  Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff's undersigned counsel is aware that the third-party marketplaces and payment services contemplated in the proposed order have cooperated with trademark owners in prior cases under similar circumstances and are accustomed to doing so as party of their business operations.  Once served, Defendants can easily use the third-party platforms to generate sales reports for the relevant products.  Thus, these third parties can comply with these expedited discovery requests without undue burden.

> **I.**     **A Bond Should Secure the Injunction.**

Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting and infringement, Plaintiff respectfully requests this Court require it to post a bond of no more than ten thousand dollars ($10,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice.  The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion.  Fed. R. Civ. P. 65(c).

## IV.    CONCLUSION

In view of the foregoing, Plaintiff respectfully requests this Court grant its ex parte application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on Plaintiff's Motion for a Preliminary Injunction before the expiration of the temporary restraining order.  Additionally, due to the time provisions of a

temporary restraining order, in the event the application is granted, Plaintiff respectfully requests the Court provide a copy of the temporary restraining order to Plaintiff's counsel via e-mail at rweaver@brickellip.com so that Plaintiff may immediately effectuate any relief ordered therein and provide Defendants' proper notice of the order and any subsequent hearing date.

Date:   June 28, 2023                          Respectfully submitted by,

_/s/ A. Robert Weaver_
Arthur Robert Weaver (Fla. Bar No. 92132)
Email: rweaver@brickellip.com
THE BRICKELL IP GROUP, PLLC
1101 Brickell Avenue, South Tower, Suite 800
Miami FL, 33131
Telephone: (305) 728-8831

_Attorneys for Plaintiff_