UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-22385-ALTMAN/Reid

**THE SMILEY COMPANY SPRL**,

    *Plaintiff*,

v.

**THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A**,

    *Defendants.*
_____/

## ORDER GRANTING EX PARTE APPLICATION FOR
## TEMPORARY RESTRAINING ORDER

The Plaintiff has filed an *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "Application") [ECF No. 6]. The Plaintiff, The Smiley Company SPRL ("Smiley"), moves, *ex parte*, for entry of a temporary restraining order against the Defendants, the Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" (collectively the "Defendants"), and an order restraining transfer of assets pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, Federal Rule of Civil Procedure 65, The All Writs Act, 28 U.S.C. § 1651(a), and the Court's inherent authority.

We have carefully considered the Application, the record, and the governing law. For the reasons stated below, the Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order [ECF No. 6] is **GRANTED**.

## BACKGROUND

The following factual background is taken from the Plaintiff's Complaint [ECF No. 1], the Application, and supporting evidentiary submissions and exhibits.

Smiley is the owner of trademarks duly registered on the Principal Register of the United States Patent and Trademark Office, as well as the owner of copyrights duly registered with the United States Copyright Office. (Loufrani Decl. [ECF No. 6-2] ¶ 9–10). A table identifying the trademarked and copyrighted works are attached to the Complaint as Exhibits 3 and 4, respectively. (Loufrani Decl. ¶ 9–10; ECF No. 6, Ex. 3, 4).

Smiley's products are marketed and sold throughout the United States, including within the State of Florida and this District. Products bearing the Plaintiff's artworks are sold legitimately through authorized brick and mortar retail locations. Genuine Smiley products are also sold in the United States via the Internet on https://www.smiley.com and various other authorized distributors' websites. (Loufrani Decl. ¶ 13).

Smiley's branded goods are widely legitimately advertised, promoted, offered for sale, and distributed by Smiley, authorized distributors, and unrelated third parties via the Internet. (Loufrani Decl. ¶ 19). Smiley has never granted authorization to the Defendants to advertise, market or sell unauthorized goods using the Plaintiff's trademarked or copyrighted works. (Loufrani Decl. ¶ 15).

The Plaintiff alleges that the Defendants are promoting, selling, reproducing, offering for sale, and distributing goods using counterfeits and confusingly similar imitations of Smiley's trademarks and copyrighted works within this district through various Internet-based e-commerce stores and fully interactive commercial Internet websites operating under the seller identification names set forth on Schedule "A". *See* Complaint at 1.

The Plaintiff retained a third-party investigator to investigate the Defendants' suspected sales of counterfeit Smiley-branded products. (Loufrani Decl. ¶ 16). The Plaintiff's investigator accessed the Internet-based e-commerce stores operating under Seller IDs and placed orders for the purchase of various products offered for sale bearing, or suspected to be bearing, at least one of the Smiley Marks and Copyrighted Works at issue in this action from each Defendant. At the conclusion of the

process, the Plaintiff received detailed web page captures and photographs of the Smiley-branded items originating from the Defendants' Seller IDs. (Loufrani Decl. ¶ 17).

The CEO of Smiley, Nicolas Loufrani, personally analyzed the allegedly counterfeit Smiley-branded items by reviewing the e-commerce stores operating under each of the Seller IDs, or the detailed web page captures and images of the items bearing the Smiley Marks or Copyrighted Works, and he concluded that the products were non-genuine, unauthorized Smiley products. Loufrani reached this conclusion through observations of the products' prices, which are often well below the prices of similar genuine Smiley-branded goods, and certain product and marking characteristics that are not consistent with genuine Smiley products. Smiley does not conduct business with the Defendants, nor have the Smiley Marks or Copyrighted Works ever been assigned or licensed to be used by the Defendants. (Loufrani Decl. ¶ 18).

On June 27, 2023, the Plaintiff filed its complaint [ECF No. 1] against the Defendants for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, common law trademark infringement, and copyright infringement.

On June 28, 2023, the Plaintiff filed an *ex parte* application for entry of a temporary restraining order, preliminary injunction, and order restraining transfer of assets.

## LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo,* 403 F.3d 1223, 1225–26 (11th Cir. 2005).

Additionally, Fed. R. Civ. P. Rule 65 provides that:

> The court may issue a temporary restraining order without written or oral notice to the adverse party of its attorney on if:

3

 (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

 (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

*Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

## DISCUSSION

Based on declarations submitted in support of the Plaintiff's motion, the Court concludes that the Plaintiff has a strong probability of proving at trial that the Defendants have infringed the Plaintiff's trademarked and copyrighted works, and that the infringement of the works will likely cause the Plaintiff to suffer immediate and irreparable injury if a preliminary injunction is not granted.

The following specific facts, as set forth in the Plaintiff's Complaint, the Application, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiff and to consumers before the Defendants can be heard in opposition unless the Plaintiff's request for *ex parte* relief is granted: a) the Defendants own or control e-commerce stores via Internet marketplace platforms operating under their Seller IDs, which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of the Plaintiff's rights; b) there is good cause to believe that more counterfeit and infringing products bearing the Plaintiff's copyrighted works will appear in the marketplace, that consumers are likely to be misled, confused, or disappointed by the quality of these products, and that the Plaintiff may suffer loss of sales for his genuine products; and c) there is good cause to believe that if the Plaintiff proceeds to

4

put the Defendants on notice of this application, the Defendants can easily and quickly transfer or modify e-commerce store registration data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, thereby thwarting the Plaintiff's ability to obtain meaningful relief.

In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that the Defendants have violated federal copyright laws, the Plaintiff has good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Accordingly, having considered the Application and having found good cause, we **ORDER** that the Application [ECF No. 6] is **GRANTED** and that a temporary restraining order be entered as follows:

## TEMPORARY RESTRAINING ORDER

1. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court:

 a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Works, or any confusingly similar image, other than those actually manufactured or distributed by Plaintiff; and

 b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Works, or any confusingly similar image; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Work or any confusingly similar image; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled,

or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant;

   c. From copying, displaying, distributing or creating derivative works of Plaintiff's copyrighted Works; and

2. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Work, or any confusingly similar image, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs. This order is limited to the Defendants' listings using the Work, or any confusingly similar image, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs, and does not apply to the Defendants' entire e-commerce stores.

3. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Work, or any confusingly similar image, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the Seller IDs.

4. Each Defendant shall not transfer ownership of the Seller IDs during the pendency of this action, or until further order of the Court.

5. Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs that may have been deleted before the entry of this Order.

6. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Amazon Payments, Inc. ("Amazon"), Bonanza, Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), PayPal, Inc. ("PayPal"), eBay, Inc. ("eBay"), Payoneer, Inc. ("Payoneer"), WorldFirst UK Limited ("WorldFirst"), or PingPong Global Solutions Inc. ("PingPong"), Joom, SIA (Latvia) ("Joom"), Stripe, Inc. and/or Stripe Payments Company ("Stripe"), Walmart.com, and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the Seller IDs, store numbers, infringing product numbers, and/or the e-mail addresses identified on Schedule "A" hereto, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

7. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, Amazon, Bonanza, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Payoneer, WorldFirst, PingPong, Joom, Stripe, Walmart, and their related companies and

affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details: (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to; (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained; (iii) the historical sales for the defendants' listings that are alleged to infringe Plaintiff's trademarks, copyrights and patent; and (iv) the true identities along with complete contact information including email addresses of all defendants.

8. No funds restrained by this Order shall be transferred or surrendered by any Defendant, financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon, Bonanza, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Payoneer, WorldFirst, PingPong, Joom, Stripe, Walmart, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

9. No Defendant whose funds are restrained by this Order may transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon, Bonanza, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Payoneer, WorldFirst, PingPong, Joom, Stripe, Walmart, and their related companies and affiliates restrained by this Order to any other financial institution, payment processor, bank, escrow service, money transmitter or marketplace website without the express authorization of this Court.

10. Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

11. This Order shall apply to the Seller IDs, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, websites, or financial accounts which are being used by defendants for the purpose of counterfeiting and/or copying the Plaintiff's copyrighted Works.

12. This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated by the parties

## BOND TO BE POSTED

13. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), the Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court, and in the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

## PRELIMINARY INJUNCTION

14. A hearing is set before this Court on **July 17, 2023**, at **2 p.m.**, at which time the Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on the Plaintiff's requested preliminary injunction. The hearing will be conducted via Zoom. The Meeting ID is **160 7688 8099**. The Passcode is **183310**.

15. After Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall serve copies of the complaint, application, and this Order, on each defendant by e-mail and/or online contact form or other means of electronic contact provided on the e-commerce stores operating under the Seller IDs, or by providing a copy of this Order by e-mail to the marketplace platform for each of the Seller IDs so

that the marketplace platform, in turn, notifies each defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.

16. Plaintiff shall post copies of the Complaint, the application, this Order, as well as all other documents filed in this action on the website located at www.sriplaw.com/notice and shall provide the address to the website to the defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof.

17. The Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to defendants by regularly updating the website located at www.sriplaw.com, or by other means reasonably calculated to give notice which is permitted by the Court.

18. Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace websites and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to Amazon.com, Inc., Bonanza, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, ContextLogic, Walmart, and their related companies and affiliates shall, at Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with defendants' respective Seller IDs.

19. Defendants shall have five (5) business days to comply with this temporary restraining order following notice.

20. Any response or opposition to the Plaintiff's motion for preliminary injunction must be filed and served on Plaintiff's counsel by **July 7, 2023**.

21. The Plaintiff shall file any reply memorandum by **July 14, 2023**.

22. The above dates may be revised upon stipulation by all parties and approval of this Court.

23. The Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), 17 U.S.C. § 502, 35 U.S.C. § 283, Federal Rule of Civil Procedure 65, The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority.

**DONE AND ORDERED** in the Southern District of Florida on July 3, 2023.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**